**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELIZABETH LETOURNEAU,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY INNS & SUITES AND UNITED STATES<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 12-1632 (RBW) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**[1] IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF**
**AND [2] IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, identified in the Complaint as Gateway Inns & Suites (hereinafter Navy Gateway Inns & Suites ("NGIS")) and Jeanette Hudson-Gray[1] respectfully submit this Memorandum of Points and Authorities in Opposition to Plaintiff's Motion For Temporary Restraining Order and Preliminary Injunction (collectively, "Motions for Injunctive Relief") and in Support of Defendants' Motion to Dismiss. For the reasons set forth below, Defendants respectfully request that the Court deny Plaintiff's Motions for Injunctive Relief and dismiss Plaintiff's Complaint.

## INTRODUCTION

On June 29, 2012, Plaintiff, Elizabeth LeTourneau, checked into the NGIS located on the Joint Base Anacostia Bolling ("JBAB"). *See* Affidavit of Jeanette Hudson-Gray ("Hudson-Gray Decl.") ¶ 4, attached hereto as Exhibit 1. NGIS is a lodging program that is administered and operated by the U.S. Navy. *See* OPNAV INSTRUCTION 5009.1, ¶3(b)(1). At the time of

[1] United States is substituted as Defendant for Jeanette Hudson-Gray, pursuant to 28 U.S.C. §2679(d)(1).

check-in, Plaintiff stated that she was on official travel orders for business at the Pentagon. Pursuant to NGIS policy, NGIS staff asked for a copy of her travel orders. Hudson-Gray Decl. ¶ 7. Plaintiff said she did not have the orders at that time, but that she would present them at a later point. Without travel orders, guests may stay at NGIS on a space-available basis and are not permitted to make reservations for longer than one week. *Id*. at ¶¶ 8-9. Plaintiff was allowed to stay longer than one week at NGIS because of her representation that she was on official travel orders. *Id*. at ¶ 13. The staff at NGIS continued to request Plaintiff's travel orders during her stay, but she never provided them. *Id*. at ¶ 11. At some point, Plaintiff claimed she was travelling on her husband's official travel orders, but also never produced a copy of those orders. *Id*. at ¶ 12.

On August 23, 2012, Plaintiff was involved in an assault incident with another NGIS guest in the NGIS laundry room. *See* Affidavit of Anthony C. Calandra ("Calandra Decl.") ¶ 10, attached hereto as Exhibit 2. Police on the base responded and Plaintiff and the other woman involved in the assault were taken to the District of Columbia Metropolitan Police Department. *Id*. at¶ 11. On August 24, 2012, Jeanette Hudson-Gray, the manager of NGIS, requested to speak to Plaintiff about the assault incident, as well as about her travel orders. Hudson-Gray Decl. ¶ 15. Plaintiff stated that she would leave NGIS but that she wanted to leave her belongings in the room for the weekend (and that she would pay for room through the 27th). Ms. Hudson-Gray agreed and authorized her to stay through August 27, 2012. *Id*. at ¶ 15.

On August 27, 2012, Ms. Hudson-Gray spoke to Plaintiff in-person and advised her that she had lost her privileges at the NGIS and she was required to vacate her room. *Id*. at ¶ 16; Calandra Decl. at ¶ 12. Plaintiff, however, said that she had an important meeting to attend at Fort Bragg and that she wanted to again leave her belongings in the room until September 10,

2012, when she would come to retrieve her belongings and check-out of the NGIS. Ms. Hudson-Gray agreed, and Plaintiff was authorized to stay until September 10, 2012. Hudson-Gray Decl. ¶ 16; Calandra Decl. ¶ 12.

On September 10 or 11, 2012, Plaintiff called Ms. Hudson-Gray and said she was not going to be able to check out of her room on the 10th, as agreed. Ms. Hudson-Gray told her that she needed to leave and that if she failed to do so, her credit card would continue to be charged. Plaintiff replied that she would sue Ms. Hudson-Gray. That was their last conversation. Hudson-Gray Decl. ¶¶ 17-18.

On September 13, 2012, Plaintiff appealed to Captain Calandra, the Commander of JBAB. Calandra Decl. ¶ 13. After meeting with Plaintiff, Captain Calandra granted her an additional three days, until September 16, 2012, to find an alternate living arrangement and to remove her belongings and vacate the NGIS. Calandra Decl. ¶ 16. He also drafted a letter to this effect. *Id*. On September 15, 2012, Plaintiff was stopped at the front gate while driving a motor vehicle with a suspended driver's license, in violation of Department of Defense and base regulations. *Id*. at ¶ 17.

On September 16, 2012, Plaintiff failed to remove her belongings and vacate the NGIS. At the direction of Captain Calandra, she was escorted off of the installation by base police. She was given an opportunity to retrieve her belongings at that time, but she declined to do so. *Id*. at ¶ 20. By letter dated September 20, 2012, Captain Calandra permanently barred Plaintiff from the installation. *Id*.

Plaintiff's belongings were left in her room, as is, in the hope that she would contact NGIS to make arrangements to retrieve them. By September 25, 2012, she had still failed to contact NGIS about her belongings. NGIS was forced to clear out the room she had been

renting. Her personal effects have been securely stored and remain available for pick up. *Id*. at ¶ 21.

Plaintiff filed her *pro se* Complaint in the Superior Court for the District of Columbia on September 14, 2012, against NGIS and Jeanette Hudson-Gray. *See* Complaint, ECF No. 1, p. 11. Plaintiff's Complaint alleges that she was unlawfully evicted from the NGIS by Defendants. She asserts that she was discriminated and retaliated against in violation of federal law. *See id*. She seeks damages in the amount of $2500 and an injunction to prevent the eviction. *Id*.

Contemporaneously with the Complaint, Plaintiff filed two motions in D.C. Superior Court requesting a temporary restraining order and a preliminary injunction (collectively "Motions for Injunctive Relief"). *See* Motion for Temporary Restraining Order, ECF No. 1, p. 7; Motion for Preliminary Injunction, ECF No. 1, p. 9. Both motions request the same relief – an injunction against the termination of her residency at the NGIS. Although Plaintiff references the Americans with Disabilities Act (the "ADA") in her supporting Points and Authorities, it is unclear on what basis Plaintiff believes she suffered discrimination by Defendants. *See id*. Indeed, Plaintiff fails to provide any factual or legal support for her Motions. *See* LCvR 65.1 (stating that an "application [for preliminary injunction] shall be supported by all affidavits on which the plaintiff intends to rely.").

On August 27, 2012, acting pursuant to 28 U.S.C. § 2679(d), the Chief of the Civil Division of the U.S. Attorney's Office for the District of Columbia certified that Ms. Hudson-Gray was an employee of the Government and was acting within the scope of her employment for NGIS at the time of the allegations stated in Plaintiff's Complaint and Motions for Injunctive Relief. *See* Certification, ECF. No. 1, p. 18. Upon such certification, the pending action "shall be deemed to be an action or proceeding brought against the United States under the provisions

of [the Federal Tort Claims Act ("FTCA")] and all references thereto, and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). On October 1, 2012, Defendants removed this case from D.C. Superior Court to this Court pursuant to 28 U.S.C. §§1442(a)(1), 1446, and 2679(d)(2). *See* Notice of Removal, ECF No. 1.

## LEGAL STANDARDS

### I. APPLICABLE LEGAL STANDARD FOR INTERIM INJUNCTIVE RELIEF

The criteria that govern the issuance of interim injunctive relief in this Circuit are well-settled. "In considering a request for a TRO, the court must examine whether: '(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by an injunction.'" *Abdah v. Bush*, Civ. A. No. 04-1254 (RMC), 2005 WL 589812, *2 (D.D.C. Mar. 12, 2005) (*quoting Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 360 (D.C. Cir. 1999)). Indeed, preliminary injunctions are extraordinary forms of judicial relief, and courts should only grant them sparingly. *Howard v. Evans*, 193 F. Supp. 2d 221, 227 (2002).

Furthermore, TROs are generally used to protect the status quo during the pendency of litigation. *See id.* When a party seeks a TRO or a preliminary injunction not to maintain the status quo, but rather to alter the status quo and provide the ultimate relief sought (*i.e.*, a "mandatory injunction"), "the plaintiff must demonstrate beyond the familiar 4-part test for injunctive relief, that he is 'clearly' entitled to the relief he seeks or 'extreme or very serious damage will result.'" *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 91 (D.D.C. 2007) (denying TRO) (*quoting Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (denying preliminary injunction)). Here, Plaintiff seeks extraordinary relief – *i.e.*, reinstatement

of her ability to reside in lodging at the Navy Gateway Inns & Suites on JBAB – yet does not come close to satisfying the exacting standard, as discussed in greater detail below.

## II. LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(b)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may be presented as a facial or factual challenge. "A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint, while a factual challenge is addressed to the underlying facts contained in the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotation marks and citations omitted). A district court deciding a facial challenge must accept as true the allegations contained in the complaint and consider the factual allegations in the light most favorable to the non-moving party. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). With respect to a factual challenge, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The plaintiff bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance of evidence. *Erby*, 424 F. Supp. 2d at 182.

## III. LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits but instead tests whether a plaintiff has properly stated a cause of action. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quote omitted). A complaint alleging facts that are "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quote omitted).

"A *pro se* complaint like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). "Even under liberal notice pleading standards, a complaint may be dismissed if it does not articulate a factual or legal basis for relief." *Banks v. Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007). Thus, to survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must contain a short and plain statement of the (1) grounds upon which the court's jurisdiction depends, and (2) claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a).

## ARGUMENT

### I. PLAINTIFF FAILS TO SATISFY THE LEGAL STANDARDS FOR OBTAINING INTERIM INJUNCTIVE RELIEF.

Plaintiff cannot meet the heavy burden for obtaining injunctive relief because she has not demonstrated that any of the four factors considered in granting such relief weigh in her favor.

#### A. Plaintiff Cannot Establish a Likelihood of Success on the Merits.

Plaintiff appears to seek injunctive and monetary relief for a tort (*i.e.*, unlawful eviction)[2] allegedly committed by NGIS and Ms. Hudson-Gray, a federal employee acting in her official capacity and in the scope of her duties. As detailed below, Plaintiff cannot succeed on the merits of her claim. Accordingly, Plaintiff's claim is subject to immediate dismissal under Rule 12(b)(1) or 12(b)(6).

Because of sovereign immunity, it is axiomatic that a court has subject matter jurisdiction in actions against the federal government only with the consent of Congress. *Block v. North*

[2] *Camalier & Buckley–Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 420 n. 93 (D.C. Cir. 1975) (referring to "wrongful eviction" as a tort).

*Dakota*, 461 U.S. 273, 287 (1983). "[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block*, 461 U.S. at 287; *see Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 577 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 1048 (1976). Thus, if the plaintiff fails to meet the jurisdictional requirements for judicial review, he loses the consent of the United States to be sued and his action may not be heard by the court. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941); *accord United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The FTCA is a waiver of sovereign immunity that permits, subject to certain conditions, common law tort claims to be asserted against the federal government. *See* 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA requires plaintiff to submit an administrative claim prior to suing in federal court. *See id*, § 2675(a). Here, however, Plaintiff has not alleged exhaustion of her administrative remedies under the FTCA. Furthermore, NGIS has no record indicating that Plaintiff has submitted a valid administrative claim. *See* Declaration of Patricia A. Leonard ("Leonard Decl.") at p. 2, attached hereto as Exhibit 3. Even if Plaintiff had filed an administrative claim immediately after she was allegedly notified that she was going to be evicted from NGIS, the six months allotted for such a claim to be processed by the agency cannot possibly have run yet. *See* 28 U.S.C. § 2675(a). It was not until August 27, 2012 that Plaintiff was first advised by management at NGIS that she had lost her privileges there and was required to vacate her room. Calandra Decl. ¶ 12. This requirement is jurisdictional and cannot be waived. *Hohri v. United States*, 782 F.2d 227, 245-46 (D.C. Cir. 1986), *reh'g denied*, 793 F.2d 304 (D.C. Cir. 1987), *rev'd on other grounds sub nom. United States v. Hohri*, 482 U.S. 64 (1987). An action cannot be maintained under the FTCA where the complaint is filed before

such an administrative claim is finally denied or six months have passed. 28 U.S.C. § 2401(b); *see McNeil v. U.S. Public Health Serv.*, 508 U.S. 106 (1993); *GAF Corp. v. United States*, 818 F.2d 901, 904 & n.86 (D.C. Cir. 1987). As such, Plaintiff's claim for wrongful eviction cannot be maintained because she has failed to exhaust her administrative remedies under the FTCA.

Even if Plaintiff's failure to satisfy the jurisdictional requirements of the FTCA could be overlooked, the FTCA does not authorize actions for injunctive relief – only actions for money damages. *Id.* § 1346(b). Thus, Plaintiff's Motions for Injunctive Relief cannot be granted pursuant to the FTCA.

**B. Plaintiff Has Failed to Show Irreparable Harm.**

Where the plaintiff fails to show a substantial likelihood of success on the merits – as is the case here – the plaintiff "must make a 'very strong' showing of irreparable harm to obtain a TRO." *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 90 (internal citations omitted). As it is, the "irreparable injury requirement erects a very high bar for a movant . . . . A plaintiff must show that it will suffer harm that is 'more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff' . . . . To warrant emergency injunctive relief the alleged injury must be certain, great, actual, and imminent." *Coalition for Common Sense in Gov. Procurement*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008). In addition, a failure to demonstrate irreparable injury can be the decisive factor in denying a motion for interim injunctive relief. *Id.* at 168.

Here, Plaintiff has failed to demonstrate that she will suffer irreparable harm if she is removed from NGIS. As mentioned above, she has not provided any factual support for her Motions for Injunctive Relief. Moreover, Plaintiff has not been staying at NGIS since she was escorted off of the installation on September 16, 2012. Calandra Decl. ¶ 18. Thus, her Motions for Injunctive Relief seek to alter the status quo. Where a "plaintiff seeks a mandatory injunction

that would alter the status quo, the plaintiff must demonstrate beyond the familiar 4–part test for injunctive relief, that he is 'clearly' entitled to the relief he seeks or 'extreme or very serious damage will result.'" *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 91 (D.D.C. 2007) (denying TRO) (*quoting Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (denying preliminary injunction)).

Here, Plaintiff has failed to make any demonstration of irreparable injury, let alone a showing that she is clearly entitled to reinstatement of her ability to stay at NGIS on JBAB. Aside from a conclusory statement in her Complaint to this effect, Plaintiff has not demonstrated that she has a right to reside at NGIS. To the contrary, NGIS is not intended to be permanent, but rather temporary housing (although sometimes extended if one is travelling with official travel orders on Department of Defense ("DOD") business). Hudson-Gray Decl. ¶¶ 8-9. Although Plaintiff told NGIS staff that she was on official travel orders when she checked in to NGIS, she never produced those orders for inspection. *Id*. at ¶¶ 7, 11-12. Even if she had been eligible to stay at NGIS for an extended period of time due to official travel orders, this still would not *entitle* her to unconditionally stay there, particularly in light of her involvement in an assault at NGIS and attempt to operate a motor vehicle with a suspended driver's license in violation of DOD and base regulations. Calandra Decl. ¶¶ 10-11, 17. Plaintiff has failed to demonstrate that she is clearly entitled to reinstatement of her ability to stay at NGIS, and in fact, has failed to demonstrate that irreparable injury will result if her Motions for Injunctive Relief are not granted.

### C. The Harm to Defendants and the Public Interest Strongly Weigh Against Issuing the Requested Injunctive Relief.

Significant harm will be done to the Defendants and to the public interest if Plaintiff's Motions for Injunctive Relief are granted. Granting an injunction that would allow Plaintiff to

return to the NGIS could potentially affect the safety and welfare of the residents and employees that live and work on JBAB. As mentioned above, Plaintiff has previously been involved in an assault incident with another guest of NGIS. Calandra Decl. ¶ 10. Furthermore, she has been found in violation of Department of Defense and base regulations for driving a motor vehicle on base with a suspended driver's license. Calandra Decl. ¶ 17. By ordering Defendants to allow Plaintiff to stay at the NGIS, the Court would potentially be putting the residents at risk and would be severely interfering with the Commander of JBAB's ability to fulfill his responsibility to secure the health, safety and welfare of the JBAB population. Calandra Decl. ¶¶ 4, 6; *see Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886 (1961) (acknowledging and reaffirming the broad power of a military commander to exclude civilians from a military reservation, holding that the power of a commander over an installation is "necessarily extensive and practically exclusive, forbidding entrance and controlling residence as the public interest may demand."). The injunctive relief sought by Plaintiff would be a severe infringement on the Commander of JBAB's authority to bar individuals from the base who are deemed detrimental to the safety and welfare of the JBAB population. This would be harmful to Defendants, as well as against the public interest.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motions for Injunctive Relief and dismiss this case. A Proposed Order is attached.

Dated: October 5, 2012

Respectfully Submitted,

RONALD C. MACHEN JR.
D.C. Bar # 447889

United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: /s/ *Sobia Haque*
SOBIA HAQUE, D.C. BAR #483440
Special Assistant United States Attorney
555 4th Street, N.W., Rm. E-4916
Washington, D.C. 20530
Tel: (202) 305-9927 Fax: (202) 514-8780
sobia.haque2@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2012, I caused copies of the foregoing Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Opposition to Plaintiff's Motions for Injunctive Relief and in Support of Defendants' Motion to Dismiss to be served by first class mail upon *pro se* Plaintiff at the following address:[3]

Elizabeth LeTourneau
1100 Wythe Street
Alexandria, VA 22313

*/s/Sobia Haque*
SOBIA HAQUE
Special Assistant United States Attorney

[3] The address provided by Plaintiff is the address for the U.S. Post Office in Alexandria, VA. Without a corresponding P.O. Box number, counsel for Defendants is not confident that Plaintiff will receive the foregoing documents. Counsel has nonetheless served the foregoing documents to the above address, which is the address to "be conclusively taken as the last known address . . . of the party . . . ." (LCvR 11.1). In an effort to ensure actual receipt of Defendants' foregoing filings, counsel for Defendants has also caused scanned versions of the final documents to be transmitted to Plaintiff via an e-mail address that she provided to NGIS. Defendants' counsel, however, is not placing that e-mail address on the public record at this time.